**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

TAYLOR BOONE,

     Plaintiff,

     v.

DELTA AIR LINES, INC., et al.,

     Defendants.

Case No. 4:25-cv-123

## <u>OPINION & ORDER</u>

Plaintiff Taylor Boone brought this suit against Delta Air Lines, Inc., as well as several other airlines and entities, alleging that he was injured while boarding a Delta flight. After Delta removed the case to this Court, the plaintiff filed an amended complaint, as well as a corrected amended complaint. ECF Nos. 9–10. Delta has now moved to dismiss the plaintiff's claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF Nos. 12 (motion), 13 (memorandum). Additionally, the plaintiff has requested leave to amend, ECF No. 15, his amended complaint, ECF No. 9, and replace it with his already filed corrected amended complaint, ECF No. 10.

For the reasons stated herein, Delta's motion to dismiss will be **GRANTED IN PART** and **DENIED IN PART**. The plaintiff's motion for leave to file the corrected amended complaint will be **GRANTED**.

## I.    BACKGROUND

At this stage, the Court assumes that the facts alleged in the complaint are true. The plaintiff was injured on a Delta flight that took place on August 19, 2024. ECF No. 9 ¶¶ 5–6. The flight was part of a multi-city trip from Norfolk, Virginia, to Paris, France, to Salt Lake City, Utah, and then back to Norfolk, Virginia. *Id.* ¶ 6. The plaintiff is paralyzed from his chest down and requires a wheelchair. *Id.* ¶ 7. The plaintiff also suffers from dysesthetic pain syndrome. *Id.* When the plaintiff boards an airplane, he has to be transferred from his wheelchair into his seat on the plane via a specific transferring process. *Id.* ¶¶ 8–9. This procedure requires the wheelchair vendors to lift up the seat armrest, pick up the plaintiff in a particular manner, and set him down into his seat. *Id.* ¶ 9.

After the plaintiff boarded the plane in his wheelchair, but before he had been transferred into his seat on the plane, the flight staff were unable to move the armrest on the plaintiff's seat. ECF No. 9 ¶¶ 9, 13, 27–28. Neither the flight attendants, the wheelchair vendors, nor the customer resolution officer were able to successfully lower the armrest. *Id.* The flight attendants and vendors tried assigning the plaintiff to a new seat, but they either could not lower the armrest on the new seat or were unable to move the plaintiff's wheelchair to the new seat due to the small size of the aircraft. *Id.* ¶¶ 13, 21–23. Further, the flight attendants and vendors were hurrying, rather than listening to the plaintiff while he was trying to explain the proper transfer procedure. *Id.* ¶¶ 10–12, 34, 37, 40.

With the armrest still up, and without coordinating with the plaintiff, two wheelchair vendors abruptly picked him up, reaching under the plaintiff's arms and grabbing his ankles to do so. ECF No. 9 ¶ 43. While lifting the plaintiff over the armrest, the vendors dropped the plaintiff on the armrest. *Id.* Then, rather than picking the plaintiff back up to place him down in his seat, the wheelchair vendors dragged the plaintiff across the armrest towards his seat. *Id.* ¶ 44. This caused the plaintiff excruciating pain, which was exacerbated by his preexisting medical condition. *Id.* ¶¶ 25, 47–48.

Based on these allegations, the plaintiff has brought four claims for relief against Delta: (1) a claim for bodily injury caused by an accident that occurred in connection with an international flight, pursuant to the Montreal Convention; (2) common law negligence; (3) common law gross negligence; and (4) common law negligent hiring. ECF No. 9 at 19–23. The plaintiff also brought these claims jointly and severally against six other defendants, none of whom have yet been served.

The plaintiff initially filed this lawsuit in the Virginia Beach General District Court. ECF No. 1 ¶ 1 n.1. The plaintiff then filed the complaint in the Newport News Circuit Court and requested a nonsuit in his original filing in Virginia Beach. *Id.* Delta then removed the case to this court. *See* ECF No. 1.

## II.   LEGAL STANDARD

"To survive a motion to dismiss," under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead sufficient "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.

## III.   ANALYSIS

Delta makes several arguments supporting dismissal of the plaintiff's complaint in its entirety. ECF No. 13. First, Delta maintains that the plaintiff's claims are barred by the claim-splitting doctrine. *Id.* at 7–8. Second, Delta asserts that the plaintiff's Virginia state law claims are preempted by the Montreal Convention. *Id.* at 8–9. Third, Delta contends that irrespective of the fact that the state law claims are preempted, they each fail as a matter of law because the plaintiff has failed to state a claim for relief. *Id.* at 9–11. Fourth, raising the argument for the first time in its reply brief,[1] Delta argues that the plaintiff fails to state a claim for relief under the Montreal Convention. ECF No. 19 at 2–5. And fifth, also raised for

---

[1] Ordinarily, an argument raised for the first time in a reply brief will not be considered. *Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995) ("[C]ourts generally will not address new arguments raised in a reply brief because it would be unfair to the [other party] and would risk an improvident or ill-advised opinion on the legal issues raised."). However, given that the Court allowed the plaintiff the opportunity to file a sur-reply brief, the Court has considered Delta's arguments raised for the first time on reply. *See EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013) (holding that the Court may permit a sur-reply when a party would be unable to contest matters presented to the court for the first time in the opposing party's reply). Delta is cautioned that the Court will not continue to entertain arguments raised for the first time on reply.

the first time on reply, Delta argues that the plaintiff's amended complaints fail to comply with federal pleading standards. *Id.* at 5–7.

### A.    Claim-Splitting

"The rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, 273 Fed. App'x 256, 265 (4th Cir. 2008) (unpublished) (citation and quotation marks omitted). "When one suit is pending in federal court, a plaintiff has no right to assert another action on the same subject in the same court, against the same defendant at the same time." *Id.* (citation and quotation marks omitted). "Often, the rule against claim splitting applies to prevent a plaintiff from filing a new lawsuit after the court in an earlier action has denied the plaintiff's request for leave to amend to add the claims later asserted in the second lawsuit." *Id.*

Here, Delta asks the Court to dismiss the plaintiff's claims for violation of the claim-splitting doctrine because the plaintiff had two lawsuits, both arising from the same incident, pending at the same time. ECF No. 13 at 2–3. The plaintiff filed his state court complaint—prior to filing two amended complaints after removal—in Newport News Circuit Court on July 29, 2025, at 4:56 p.m. *Id.* at 3. The clerk of that court accepted the case on July 30, 2025, at 8:21 a.m. *Id.* However, prior to filing in Newport News, the plaintiff had previously filed a warrant in debt in Virginia Beach General District Court arising out of the same incident. *Id.* at 2; *see Boone v. Delta Air Lines, Inc.*, Case No. GV25013084-00. The plaintiff did not request a nonsuit in

the warrant in debt until July 30, 2025, at a hearing on several pending motions. *Id.* Therefore, Delta contends that this case must be dismissed under the claim-splitting doctrine because the plaintiff filed a second lawsuit in circuit court one day prior to requesting a nonsuit on the prior warrant in debt in general district court. *Id.* at 8.

The Court rejects Delta's argument. The purpose of the claim-splitting doctrine is to protect defendants from having to defend against multiple lawsuits arising out of the same incident. *See Sensormatic*, 273 Fed. App'x at 265 (citing *Trustmark Insur. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269–70 (11th Cir. 2002)). Here, Delta is not subjected to defending against multiple actions based on the same transaction because the plaintiff voluntarily requested a nonsuit in his first lawsuit. ECF No. 13 at 2. Further, the general district court had not previously denied a motion or request for relief from the plaintiff, such that Delta is now relitigating issues that had been previously decided. *See Sensormatic*, 273 Fed. App'x at 265 (citing *Northern Assurance Co. of Am. v. Square D. Co.*, 201 F.3d 84, 87–88 (2d Cir. 2000)). Rather, the plaintiff requested a nonsuit in the Virginia Beach case on the same day that the Newport News complaint was accepted, and one day after the complaint was filed. ECF No. 13 at 2–3. Thus, the concerns that the doctrine of claim-splitting are designed to protect against are not implicated here.

Additionally, it is apparent that the plaintiff filed the Newport News case in anticipation of requesting a nonsuit at the hearing in Virginia Beach the next day— not for the purpose of bringing multiple lawsuits against Delta based on the same incident. ECF No. 13 at 2–3. Moreover, the plaintiff's apparent failure to disclose the

existence of the new lawsuit at the general district court hearing does not persuade the Court. *Id.* at 8. To dismiss the plaintiff's claims based on filing a new complaint several business hours before a nonsuit was requested in the previous action would be contrary to the purpose of the claim-splitting doctrine, to prevent defendants from having to defend against multiple or duplicative claims arising out of the same incident. *See Sensormatic*, 273 Fed. App'x at 265. Therefore, the Court declines to dismiss the plaintiff's complaint based on the claim-splitting doctrine.

**B.    The Montreal Convention**

Delta argues next that each of the plaintiff's state law claims are preempted by the Montreal Convention and should be dismissed. ECF No. 13 at 8–9. Because the Court needs to consider whether the Montreal Convention applies to the plaintiff's claim prior to considering whether the Montreal Convention does in fact preempt the plaintiff's state law claims, the Court first addresses the Montreal Convention's applicability.

The Montreal Convention "is a multilateral treaty negotiated and signed in 1999 . . . to harmonize the private international air laws and also to amend important provisions of the predecessor Warsaw Convention." *We CBD, LLC, v. Planet Nine Private Air, LLC*, 109 F.4th 295, 301 (4th Cir. 2024). Article 17 of the Montreal Convention provides that a "carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention, art. 17, ¶ 1.

7

Further, the Montreal Convention applies to all international carriage, which includes any carriage that has a place of departure and a place of destination that are situated in two different countries. *See We CBD*, 109 F.4th at 303; Montreal Convention, art. 1, ¶ 2. And, where "the parties arrange and pay in full for an international trip at the outset, each leg of the journey (even though some legs may be wholly domestic, covered by a separate ticket and carried on a separate airline) is within the Convention." *McLoughlin v. Com. Airways (Pty) Ltd.*, 602 F. Supp. 29, 33 (E.D.N.Y. 1985); Montreal Convention, art. 1, ¶ 3 ("Carriage to be performed by several successive carriers . . . does not lose its international character merely because one contract or a series of contracts is to be performed entirely within the territory of the same [s]tate.").

Here, the plaintiff contends in Count I that Delta injured him in the course of an international flight, in violation of the Montreal Convention. ECF No. 9 ¶¶ 204–218. Specifically, the plaintiff claims that he booked a multi-city international trip with Delta, which traveled from Norfolk, Virginia, to Paris, France, to Salt Lake City, Utah, and then back to Norfolk, Virginia. *Id.* ¶ 6. The plaintiff further alleges that he was injured on the flight, which took place on August 19, 2024, due to the actions of Delta, or Delta's agents. *Id.* ¶¶ 5–6, 43–48, 57–58. Taking these allegations as true— as the Court must do at this stage—the plaintiff has done enough to state a claim under Article 17, ¶ 1 of the Montreal Convention. He asserts that he was injured on an international flight and that the injury took place due to an "accident" that occurred while the plaintiff was boarding the flight. *See Air France v. Saks*, 470 U.S.

392, 405–06 (1985) (holding that an "accident" refers to an "unexpected or unusual event or happening that is external to the passenger," and not to "the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft."). This is sufficient to state a plausible claim for relief under the Montreal Convention.

Delta argues that the plaintiff has failed to state a claim for relief under the Montreal Convention because he does not allege the specific flight on which the injury occurred, and that this omission is fatal to his claim. ECF No. 19 at 3–4. Delta contends that this failure "renders it impossible for Delta to test the veracity of [the] [p]laintiff's contention that Montreal governs this action." *Id.* at 3. The Court finds Delta's argument unpersuasive. Although the plaintiff did not allege the specific leg of the flight upon which he was injured, the plaintiff alleged the date of the flight, August 19, 2024, and the portion of the trip, Salt Lake City to Norfolk (with a connection in Minneapolis). ECF No. 9 ¶ 6. The plaintiff also provided the flight number, Delta flight 5511, upon which the accident took place. *Id.* Delta has provided no case law, nor is the Court otherwise aware of any law, indicating that the plaintiff had to provide the specific leg of the flight upon which the injury took place, *i.e.*, either Salt Lake City to Minneapolis or Minneapolis to Norfolk.[2] And, regardless, the plaintiff's allegations are otherwise sufficient, because the Montreal Convention provides that one may recover for an injury occurring on a domestic leg of a flight, so long as it has an international component. *See* Montreal Convention, art. 1, ¶ 3.

---

[2] The plaintiff specified in his sur-reply that the injury took place on the Minneapolis to Norfolk leg of the flight. ECF No. 20-1 at 4.

Delta also claims that the plaintiff must identify which carrier was operating the flight. ECF No. 19 at 4. However, the plaintiff stated that all allegations in the complaint, "[u]nless otherwise indicated . . . relate to . . . Delta or Delta's vendors, or both." ECF No. 9 ¶ 5. That allegation coupled with the plaintiff's identification of the specific flight, *id.* ¶ 6, permit this complaint to pass Rule 12(b)(6) muster and put Delta on notice of the specifics surrounding the plaintiff's alleged harm under the Montreal Convention.[3]

### C.    Preemption of State Law Claims

The Montreal Convention contains a preemption provision, which provides that "any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention." *See* Montreal Convention, art. 29. Therefore, state law claims are preempted by the Montreal Convention if the claim falls within the scope of the Convention. *See We CBD*, 109 F.4th at 303. "[I]n determining whether a claim is within the Convention's scope and preempted, [] courts have examined whether the claim 'falls within one of the Montreal

---

[3] In connection with his claims, the plaintiff has requested a monetary judgment of $22,000,000.00, $350,000.00 in punitive damages, attorney fees and costs, as well as all pre- and post-judgment interest. ECF No. 9 at 23. With respect to the plaintiff's request for punitive damages, Article 29 of the Montreal Convention provides that "[i]n any such action [for damages], punitive, exemplary or any other non-compensatory damages shall not be recoverable." Montreal Convention, art. 29. Accordingly, the plaintiff is unable to recover punitive damages in connection with his claim, and that portion of his damages request will be stricken. Further, to the extent that the plaintiff articulated a claim for attorney fees, he provided in his opposition that he has "withdraw[n] said claim." ECF No. 18 at 5. Therefore, the plaintiff's request for attorney fees will also be stricken.

Convention's three damage provisions.'" *Id.* (quoting *Badar v. Swissport USA, Inc.*, 53 F.4th 739, 744 (2d Cir. 2022)). The Convention's damage provisions allow passengers and shippers to recover for injuries to passengers, damage to baggage or cargo, and damage due to delay. Montreal Convention, arts. 17–19; *see Badar*, 53 F.4th at 744. And in determining whether those provisions apply, courts conduct an "assessment of the total circumstances," including an analysis of the spatial and temporal proximity, as well as the causal connection between the events giving rise to the claim. *We CBD*, 109 F.4th at 303 (citation and quotation marks omitted); *see Dagi v. Delta Airlines, Inc.*, 961 F.3d 22, 33 (1st Cir. 2020) (holding that the Montreal Convention preempted the plaintiff's claims because the plaintiff did not suffer a "distinct injury connected to distinct events that took place outside the scope of the Convention").

The plaintiff brings three claims under Virginia common law: negligence, gross negligence, and negligent hiring. ECF No. 9 ¶¶ 219–232. Each of the plaintiff's claims arise out of the same alleged injury—that the plaintiff was dropped on a Delta flight while being transferred from his wheelchair to his seat on the aircraft. *See id.* Specifically, the plaintiff contends that Delta breached the duty of care owed to the plaintiff; that Delta "took no measures whatsoever to prevent [the plaintiff's] injury" such that Delta's conduct "shocks fair-minded people"; and that Delta employed workers were "unfit for the position due to lacking the necessary education, training and experience to properly transfer [the plaintiff] in his specific medical condition." *Id.* ¶¶ 220, 223–24, 228–29. Assessing the events underlying the plaintiff's claims,

the Court finds that the claims "necessarily and inextricably arise from events that occurred during the carriage by air"—namely that the plaintiff sustained bodily injury due to an accident that took place on board the aircraft. *We CBD*, 109 F.4th at 304–05. Accordingly, the plaintiff's claims fall within the scope of Article 17 of the Montreal Convention. They are therefore preempted and will be dismissed.[4]

### D.    Improper Shotgun Pleading

Delta also argues, again for the first time in its reply brief, that the amended complaint is a classic example of shotgun pleading. ECF No. 19 at 5–7. Delta contends that the amended complaint is improper for two main reasons: (1) because the plaintiff incorporated by reference all of the amended complaint's prior allegations, such that it is impossible to know which allegations of fact are intended to support which counts; and (2) because the plaintiff did not specify which of the defendants are responsible for which acts or omissions. *Id.*

Addressing first the argument that the plaintiff did not indicate which allegations support which claims, the Court finds this argument unconvincing. The complaint is clear that all claims arise out of the same wrongful conduct—namely, that the plaintiff was injured on board a Delta flight. *See* ECF No. 9. The Court is satisfied that the complaint has done enough to make out a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

---

[4] The plaintiff also acknowledges in his opposition that the Montreal Convention "preempts Virginia law," and that to the extent the Montreal Convention is applicable, the plaintiff's state law claims would be moot. ECF No. 18 at 4 ("[I]f the Montreal Convention is controlling in the present case, which [the] [p]laintiff submits it is, [the] [p]laintiff's state law causes of action would be moot.").

The complaint alleges the facts in numbered paragraphs, lists out the causes of action, and provides a factual narrative that allows the Court to understand the relief that the plaintiff is seeking. *Cf. Almudhafer v. Spotsylvania Cnty. Pub. Schs.*, No. 3:25-cv-1075, 2026 WL 49654, at *2 (E.D. Va. Jan. 7, 2026) (providing that the "unnumbered paragraphs, convoluted and redundant narratives, and numerous legal conclusions" made it impossible for the Court to determine the viability of the plaintiff's claims). Further, because the Court is dismissing all of the plaintiff's state law claims as preempted by the Montreal Convention, there is no risk of Delta being unable to determine which allegations of fact correspond with which count.

Addressing the second argument, the Court also declines to dismiss the complaint because the plaintiff has asserted multiple claims against multiple defendants. The plaintiff has made it clear that the claims are against Delta, or Delta's agents. ECF No. 9 ¶ 5. All allegations asserted against the other defendants appear to be the plaintiff's attempt to include those defendants as individually liable in the event that they are deemed not to be Delta's agents.[5] Regardless, however, Delta is sufficiently on "notice of the claims and the grounds that [the] plaintiff's claims against [them] rest on." *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 2:24-cv-204, 2025 WL 725268, at *10 (E.D. Va. Mar. 6, 2025) (quoting *J.L. v. Best W. Int'l,*

---

[5] The Court does not believe Delta's argument on agency and the relationships between the various entities sued is wholly without merit. However, putting aside the service issue, the Court finds that, at this juncture, there is a sufficient basis to establish an agency relationship between Delta and the other named defendants and concludes that the final resolution of this question is best left for summary judgment after the parties have the benefit of obtaining discovery.

*Inc.*, 521 F. Supp. 3d 1048, 1075 (D. Colo. 2021)). Therefore, the Court declines to dismiss the amended complaint on shotgun pleading grounds.

### E.    Motion to Amend

Also before the Court is the plaintiff's motion for leave to file an amended complaint. ECF No. 15. The plaintiff filed an amended complaint on September 30, 2025. ECF No. 9. Upon realizing that the amended complaint contained the name of the wrong court in the case caption, the plaintiff filed a corrected amended complaint later that same day. ECF No. 10. Upon review of the corrected amended complaint, the only difference between the two documents is a change to the caption. *Compare* ECF No. 9 *with* ECF No. 10. The plaintiff then retroactively filed the pending motion for leave, requesting that the Court replace the amended complaint, ECF No. 9, with the corrected amended complaint, ECF No. 10. *See* ECF No. 15.

Delta filed an opposition to the motion to amend, ECF No. 17, arguing both that the motion for leave to amend should be denied as futile and that the plaintiff's repeated filings of amended complaints has created unnecessary confusion and prejudice to Delta. ECF No. 17 at 3–5. However, Delta has itself acknowledged that "the only notable distinction between the second amended complaint (ECF No. 9) and the third amended complaint (ECF No. 10) is correction of the case caption" and that "Delta treats the third [a]mended [c]omplaint (ECF No. 10) as the relevant pleading for purposes of [its motion to dismiss]." ECF No. 13 at 3, n.3. Therefore, the Court finds it prudent to grant the plaintiff's motion to amend, and will accept ECF No. 10 as the operative complaint in the case moving forward.

## IV.    CONCLUSION

For these reasons, the motion to dismiss filed by Defendant Delta Air Lines, Inc., ECF No. 12, is **GRANTED IN PART** and **DENIED IN PART**.

Counts II, III, and IV are **DISMISSED**.[6] Because the only remaining claim arises under the Montreal Convention, the requests for punitive damages and attorney fees will be **STRICKEN**.

Further, Plaintiff Taylor L. Boone's motion for leave to file an amended complaint, ECF No. 15, is **GRANTED**. The corrected amended complaint, ECF No. 10, will be the operative complaint in the case moving forward. Delta is **DIRECTED** to file an answer to the amended complaint within the time prescribed by the Federal Rules of Civil Procedure.

The Clerk is **DIRECTED** to send a copy of this Opinion & Order to the plaintiff.

**IT IS SO ORDERED**.

/s/ _____

Jamar K. Walker
United States District Judge

Newport News, Virginia
April 1, 2026

---

[6] The Court will separately issue an order directing the plaintiff to indicate his position on whether the other defendants named in the case should be dismissed. If the plaintiff believes the other defendants should remain parties to this action, the plaintiff is then directed to show cause as to why these defendants have not yet been served within the timeline provided by Fed. R. Civ. P. 4(m).

15